Battle, J.
 

 On his trial, the prisoner made two objections to the admission of testimony which were over-ruled, and prayed an instruction to the jury which was refused, all which are set forth in his bill of exceptions as the grounds of his application to have the judgment against him reversed, and a
 
 venvre de novo
 
 awarded. lie has also submitted a motion that, if another trial be refused him, the judgment shall be arrested for an alleged insufficiency of the indictment.
 

 In order to understand the pertinency of the objections to the testimony, as well as that of the instruction which was prayed, it is necessary to observe that every criminal charge involves two things; first, that an offense has been committed; and, secondly, that the accused committed it. In the present case, neither ol' these things could be proved by direct or positive testimony, so that it became necessary on the part of the' prosecution, to resort to circumstantial or pre
 
 *451
 
 sumptive evidence for the -purpose of establishing both. After the finding of what were alleged to be the charred bones of a human being in the ashes of the log pile, and in the creek, it became all important to identify them, if possible, as parts of the remains of theeupposed deceased, Peggy Isly. The first testimony objected to, was offered to show that certain hair pins which were found among the bones in the creek, belonged to her, and with that view it was proposed to prove that she was in the habit of wearing such pins. No objection was, or could be, offered to the proof that the pins were found-; and, we presume, that none would have been made to a statement that she had such in her hair when she left home. But as the witnesses could not testify to that fact, the point of the objection was to the proof that she had been in the habit of wearing them sometime before; and particularly for so long a time as two years before the time when she was last seen. The objection, it will readily he perceived, applies more against
 
 the force
 
 than the
 
 competency
 
 of the testimony. The fact, if it had been so, that the hair-pins formed a parfof her head-dress when she left home, might have been proved as one, in a chain of cir* ■cumstances, to show that the human bones found in the creek were those of a female, and that, that female was probably the supposed deceased. The testimony actually offered and <given, tended to prove, though with less strength-, the same thing, and it was, therefore, pertinent and natural-. There can be no doubt that it was open to the prisoner to reply to this testimony, and to proven if he could-, that the supposed deceased had never worn hair-pins, for the purpose of negativing the inference that the remains were her;s.
 

 The testimony offered to 'show the proper season for burning plant-beds for tóbacC'o, and the manner in which the prisoner usually prepared his, bad too obvious a tendency to conneetbim with the transaction relative to the burnt human bones,
 
 *452
 
 fasten him to the guilty deed. See
 
 State
 
 v.
 
 Bill,
 
 6 Jones’ Rep. 34.
 

 . The question raised by the instruction which the prisoner requested the Court to give to the jury, is one of much more importance than those which we have already considered, and has been attended with more trouble in the discussion and decision ofit. The instruction prayed and refused, was “that there was no evidence in the case identifying the bones and pins found, as being part of the bones and apparel of the deceased.” In support of the propriety of his prayer, the counsel for the prisoner conterds that, if it were admitted that the bones found in the log pile, the beach stump, and the creek, were those of a human being, there is no part of the testimony which shows, from any particular mark about them, or relating to them, that they were the bones of the supposed deceased more than any other dead body; and that, in this respect, the case differs essentially from that of
 
 Rex
 
 v.
 
 Clews,
 
 4 Car. and Payne 221, (19 Eng. Com. Law Rep. 354,) where the body of a man was, after lapse of twenty-three years, identified by his widow, from some peculiarity about his teeth; and also from that of the celebrated case of
 
 Commonwealth
 
 v.
 
 Webster,
 
 5 Cush. Rep. 295, where the remains of Dr. Parkman were identified, from a similar cause, by a dentist. Assuming that there was no such testimony given on the trial, the counsel insists upon,, it, as an established rule of law, that the
 
 corpus delicti
 
 must be proved by direct or positive testimony, before the accused can be convicted of the offense charged against him. The authorities upon which the counsel relies in support of his position, are Lord Chief Justice Hams and Lord Stowell. In 2 Hale’s Pl. Cr. 290, the learned author says, “I would never convict any person of murder or manslaughter, unless the facts were proved to be done, or, at least, the body found dead.” Lord Stowell, in pronouncing his celebrated judgment in
 
 Evans
 
 v.
 
 Evans,
 
 1 Hagg. Con. Rep. 105, said “when a criminal fact is ascertained, presumptive proof may be taken to show who did it — to fix
 
 the
 
 criminal, having there an actual
 
 corpus delicti;
 
 but to take presumptions, in order to swell an
 
 *453
 
 an equivocal and ambiguous fact into a criminal fact, would, I take it, be an entire misapprehension of the doctrine of pre•sumptions.” So, Mr. Starkie in his valuable work on Evidence, (see. 1, Star. Ev. 575 of 3d Ed.,) lays it down as an established rule “that upon charges of homicide, the accused «hall not be convicted unless the death be first distinctly proved,
 
 either by direct evidence of the fact, or by inspection of the •body.”
 
 Mr. Best, in his Treatise, on the Principles of Evidence, thinks that the language of these eminent authorities is too broad, and that the general principle which they lay down must be taken with considerable limitation. After noticing that, iu some offenses, the evidence establishing the existence of the crime, also indicates the criminal, while in others, the traces or effects of the crime are visible, leaving the author of it undetermined, he proceeds to remark thus of the latter: “In most cases, the pi’oof of the crime is separable from that of the criminal. Thus, the finding of a dead ■body, or a house in ashes, may indicate a probable crime, but do not necessarily afford any clue to the perpetrator. And there, again, a distinction must be drawn relative to theeffeet of ¡presumptive evidence. The
 
 corpus delicti,
 
 in eases such as we are considering, is made up of two things: first, certain facts forming its basis; and, secondly, the existence of criminal agency as the cause of them. Now, it is with respect to the former of these that the general principles of Lord Stow-3ell and Sir Matthew Hale, especially apply, and it is the established rule that the facts which form the basis of the
 
 corjncs delicti
 
 ought to be proved, either by direct testimony, or by presumptive evidence of the most cogent and irresistible •kind.” See Best Prin. of Ev. 321, (66 Law Lib, 205-206.) — - 'The admission of proof of the
 
 corpus delicti
 
 by presumptive •evidence-of any kind, is manifestly a qualification of the strict rule laid down by the great Judges whose remarks we have quoted. This qualification of the rule is contended for by the celebrated Jeremy Bentharn, who says “Were it. not so, a murderer, to secure himself with impunity, would have no more to
 
 do
 
 but to consume, or. decompose the body by fire,
 
 *454
 
 by lime, or by any other of the known, chemical menstrua, or-to-sink it in- an unfathomable part of the sea;” 3 Smith. Jud. Ev. 234. Mr. Best states.in a-note to-page 323 of his work, that lie believed that eminent J'udge, Baron. Rolfe, after-wards Lord Chancellor CraNWORTii, had instructed a grand jury- that the rule excluding presumptive evidence of the bar sis of the
 
 corpus delicti
 
 was not universal. Such, too, seems, to have- been the opinion, ©f Best, Judge, in. the elaborate opinion which he gave in the case of
 
 Rex
 
 v.
 
 Burdett,
 
 4 Barn. and Ald. 95, (6 Com. Law Rep., 358.) In speaking- of presumptive evidence, he- says,
 
 “
 
 un-til- it pleases Providence to give us means beyond those our present faculties afford, of knowing things done-in secret, we must act on presumptive proof, or leave the- worst crimes unpunished. I admit, where presumption, is attempted to be raised;,, as to
 
 thocorjms
 
 delicti,. that i-t ought to be strang-and cogent.” The same view of the* rule- is taken by the later writers on the subject, and we adopt it as the correct one* See Will’s Circum. Ev. 204, (41 Law Lib. 85.) Wharton’s Am. Cr. Law, Sec. 747. We hold, therefore, that his Honor committed no error in refusing to-give the instruction as- prayed, and we cannot discover anything in the charge, which he did give, of-which-the prisoner-has any just cause of complaint.
 

 The motion- for the reversal of the judgment and the grant ©f a
 
 venire d-e novo
 
 is o-ver-rnled, and that brings up for consideration the motioir for an arrest of the judgment. This isfonnded- upon the alleged insufficiency c-f the indictment, and the objection to it is the means whereby the homicide is charged to have been committed, are-stated-to be to the jurors-unknown. The indictment is substantially, if not literally, the same with the fourth- count, of the indictment against Dr-Webster, which, after argument and matare deliberation, waesustained by the judgment of the Supreme Judicial Court of Massachusetts see
 
 Commonwealth
 
 v.
 
 Webster,
 
 5 Cush. Rep. at p. 296. If the person killed be a stranger, it is well settled that it may be charged in the indictment, that his name, if the fact be so, is to the jurors unknown, and we-are onaMe-to,
 
 *455
 
 perceive any difference, in principle between such a charge, and one where the instrument and means of death are, in fact, not known to those who- are called u-pon to find the bill. The motion in arrest of judgment is, therefore, refused ; and it must be certified to the Superior Court o-f law for the county of Kockiugham, that there is no- error in the record.
 

 Per CuriaM,
 

 Judgment affirmed.