## MINTER *v.* THE STATE.

1. An indictment which charges that the accused, " by cursing and using profane and obscene language, and by being intoxicated, and by fighting, and by loud talking, and by  .  .  otherwise indecently acting, did interrupt and disturb a congregation of persons  .  .  lawfully assembled

for divine service," is sufficient, without specifying the precise language alleged to have been used by the accused, or designating the person with whom he fought.

2. Objections to all the evidence introduced in a case, which do not point out any portion of it as illegal, will not be considered if any of the evidence was pertinent and admissible.

3. A congregation of persons which had just been lawfully assembled under a bush-arbor for divine service could, in legal contemplation, be "disturbed" by such acts as are specified in section 418 of the Penal Code, although the persons composing the congregation may have been dismissed from the arbor but remained assembled around it for the purposes of administering to the wants of their domestic animals and preparing and eating their own dinners. This is true whether the words, "and until they are dispersed from such place of worship," embraced in that section, do or do not properly, in terms, constitute a part of the law relating to the offense therein defined.

4. A charge in an indictment, that the accused disturbed a congregation of persons lawfully assembled for divine service "at" a named church, is sustained by proof that he disturbed a congregation so assembled for such purpose at a bush-arbor near such church, both places being within the jurisdiction of the court.

Lumpkin, P. J., dissenting. A presentment which charges that the accused disturbed a congregation of persons lawfully assembled for divine service "at" a named church is not sustained by evidence showing that a congregation assembled for such service at or near a bush-arbor, about two hundred yards distant from such church, was disturbed, there being no affirmative evidence that this arbor was in fact "at" the church, and all the witnesses, after having their attention directly called to this identical matter, testifying that, in point of fact, it was not at the church. This court should not, in my judgment, undertake, as matter of law, to say that the witnesses did not know whereof they testified; or, by construction, give their testimony a meaning different from what they themselves evidently intended it should have.

Argued May 3, — Decided July 19, 1898.

Certiorari. Before Judge Hart. Jasper superior court. March term, 1898.

The special presentment charged, that on September 5, 1897, Richard I. Minter, "by cursing and using profane and obscene language, and by being intoxicated, and by fighting, and by loud talking, and by then and there otherwise indecently acting, did interrupt and disturb a congregation of persons then and there lawfully assembled for divine service at Concord church, a primitive Baptist church." Defendant demurred on the following grounds: (1) General. (2) Failure to specifically set out the manner in which he interrupted and disturbed the con-

gregation. (3) Failure to set out and specifically aver the words used by him in cursing and using profane and obscene language. (4) Failure to charge with whom he fought, and to charge whether or not he fought in mere wantonness or in defense of his person or property and under circumstances wholly justifiable. (5) Failure to specifically set out the language used by him in loud talking. (6) Failure to specifically allege his conduct in acting indecently: The overruling of this demurrer is assigned as error. The evidence was as follows:

J. A. Stone testified: In Jasper county, Georgia, on the first Sunday in September last, the Towaliga Primitive Baptist Association was being held at a bush-arbor, across the road from, and about two hundred yards from, Concord Primitive Baptist Church. There was preaching, praying, and singing by the congregation so assembled at said arbor. I do not think that any divine services were held on that day at Concord Church. I passed the church and saw no services there. The only services I know of were held at the bush-arbor. It was after the dismission of the congregation for dinner, and the people were engaged in feeding their stock and preparing dinner for themselves, when the defendant came up to where I was standing talking to W. R. Pope, and said, "I am ready to settle that little bill with you." I replied, "There is nothing between us to settle, and this is not the time and place for a settlement." He said, "Your wife claims something against us, and I am ready to settle it. Besides, you put her up to making the claim, and you know it." Whereupon I said, "That is not true." He said, "You are a lie." I said, "Whoever says that I put my wife up to making a claim tells a falsehood," or "a lie," I do not remember which. He then struck me and grabbed me and pushed me down. He had a knife in his hand, and made a slight cut, that took some ten days to heal, on my face with it. He was pulled off by some parties. He was told by me that I did not want a difficulty at that place, and that I would not have a difficulty there. He said, "By God, I will." This was all the cursing I heard. No loud talking was done. You can scarcely see a man from Concord Church to the place where he struck me. You could not have heard what passed between

us at this church. There was but one difficulty. It was continuous, and lasted not over a minute, or a minute and a half. We were some ten feet from the east end of the arbor when all this took place. People were around us everywhere. Nobody ran up to us, except three or four who were standing right at us. I was facing him when he struck and cut me. He had his knife in his left hand. The cut is on my left cheek. It left no scar. He also had an umbrella in his hand at the time. I did not see any part of the knife except a short, blunt blade.

W. R. Pope testified: At the bush-arbor, some two hundred yards from Concord Church, on the day alleged, I was standing talking to J. A. Stone about some business matters, touching some cotton, when defendant came up and said to Stone something about settling some bill connected with the last sickness of W. S. Minter. He spoke rather low and indistinctly, and I did not fully catch the whole remark. Stone said that this was not the time and place to settle. Defendant said something about Stone putting his wife up to making bill. Stone denied this. Defendant called Stone a lie. Stone said, "You are another." Defendant struck Stone with his fist in the face, knocking him some five feet. I saw no knife. I heard no cursing. There was no loud talking. Nobody could tell a fight was going on, except those standing close to them. I immediately left and went some fifty yards to McDowell's stable. When I left Stone and defendant were talking. This was after the first fight or lick. I came back by Stone and defendant; and soon after, I looked back and saw Stone down on the ground and Minter over him. There were two encounters. Heard Stone say he did not want a difficulty. All this took place after the congregation had been dismissed. Do not think there were any services held at Concord Church that day. Saw two men carrying Stone off after the second difficulty. It was the quietest fight I ever saw.

Alec Polk testified: Was standing a few feet from defendant and Stone when they had difficulty. Heard some woman say, "They are fighting." Turned and saw Stone on the ground, and defendant over and behind him. Defendant had Stone by the neck or face. I went to them, caught hold of Stone with

one arm, and raised him up, and with the other I took defendant's hand off Stone's neck or face. Before defendant struck Stone, heard defendant say something about wanting witnesses, if that was the way Stone looked at the matter. Saw what I took to be a small white-handle penknife in defendant's hand. Could not see blade. If it was open, it was covered up, blade and all, by the defendant's hand and thumb. Two or three men came up and took Stone away. Do not think there were any services at Concord Church that day.

A. J. Leverett testified: Heard and saw the difficulty. Was close to Stone and the defendant. Heard Stone say he had come there to act like a white man. Defendant said, "So did I." Stone then said, "You have not acted white." Defendant then struck Stone and pushed him down. Heard no cursing or loud talking. There was none. Saw no knife. Defendant struck with the back of his hand. There was no service at Concord Church that day, I think. I went about the church. There had been services at an arbor, some two hundred yards from Concord. But the congregation had been dismissed at time of difficulty. People were feeding stock and preparing for dinner. You could neither see nor hear the difficulty between Stone and the defendant at the church, even if there had been services there. Defendant caught Stone with open hands by the face.

C. Q. Lane testified: Was passing by Minter and Stone when I heard Stone say, "I want no difficulty." Minter made some reply, but he spoke lower than Stone, and I did not hear what he said. My wife was with me. After I got some twenty feet beyond them, heard a noise as if of scuffling, and heard some one say, "They are fighting." Looked back and saw Stone down and Minter over him. Some men took Stone up and carried him off. Saw no knife. Heard no cursing or loud talking. It was after the congregation had been dismissed and the people were preparing dinner. It was at least a hundred and seventy yards from Concord Church to the place of difficulty. I do not think there were any divine services at Concord Church that day. Could neither see nor hear at the church what took place during this difficulty. Defendant caught Stone by the face with open hands.

James Leverett testified : Heard and saw the difficulty. Was standing close by. Heard Stone say he came there to act the white man. Heard Minter say, "So did I." Stone said, "You have not acted a white man." Minter struck Stone with the back of his hand. I saw no knife. I heard no cursing. Some parties carried Stone off. There was no divine service at Concord Church that day. It was fully two hundred yards from Concord Church to the bush-arbor where Towaliga Association was being held. No services were going on at this arbor when the fight took place.

The opinion states the other facts.

*J. D. Kilpatrick,* for plaintiff in error. *H. G. Lewis,* solicitor-general, by *Anderson, Felder & Davis,* contra.

FISH, J. 1. Was the demurrer to the presentment properly overruled? It charged that the accused, "by cursing and using profane and obscene language, and by being intoxicated, and by fighting, and by loud talking, and by . . otherwise indecently acting, did interrupt and disturb a congregation of persons . . lawfully assembled for divine service," etc. With the exception of the charge of fighting, the language of the presentment is in the terms of the statute. Penal Code, § 418. "On the general principles of common-law pleading, it may be said that it is sufficient to frame the indictment in the words of the statute, in all cases where the statute so far individuates the offense that the offender has proper notice, from the mere adoption of the statutory terms, what the offense he is to be tried for really is." Whart. Cr. Pl. & P. § 220. The terms of the statute upon which this presentment is founded so distinctly individuate the offense which it defines, that the use of such terms in charging the offense in the presentment sufficiently notified the accused of what he was called upon to answer. The gist of the offense is the *disturbance* of a congregation lawfully assembled for divine service; and the manner and means, or the particular acts, by which the disturbance of such congregation may be effected are set out in the statute; and a general allegation that the disturbance was caused by such acts is all that is necessary, without entering into details. 7 Enc. Pl. & Pr. 41 and 42. Section 427 of the Penal Code

provides that "any person who shall willfully interrupt any public school," etc. In *Huffman* v. *State*, 96 *Ga.* 469, the record of file in this court shows that the indictment charged that Huffman, "did by cursing and quarrelling and fighting and discharging a loaded pistol, and by boisterous conduct and by otherwise indecently acting, willfully interrupt and disturb an assemblage of the public school," etc.; that a special demurrer was filed to the indictment as to all allegations contained in the specifications therein, except the charge of discharging a loaded pistol, on the ground that the charges were not definite and specific enough to put him on notice of the evidence to be introduced under them. The demurrer was overruled, the accused excepted, and this court held that the indictment sufficiently described the mode of interruption or disturbance, and that under such indictment evidence was admissible which tended to establish the charge. In State *v.* Ratliff, 10 Ark. (5 English), 530, it was held that in an indictment for disturbing a religious congregation by profanely swearing, it was not necessary to charge the particular language used by the accused; that the disturbance of the congregation was the gist of the offense, and the profane swearing alleged was the means of disturbance, and hence the particular language employed by the offender was not material, and need not be alleged. This ruling was followed in State *v.* Minyard, 12 Ark. (7 English), 156, and State *v.* Hinson, 31 Ark. 638. In Thompson *v.* State, 16 Tex. App. 159, the above-named Arkansas cases were approvingly cited; and the court held, that "It is not necessary, in charging the manner of the disturbance, to enter into details. A general statement, as that it was effected by 'loud talking,' 'swearing,' 'discharging firearms,' whistling, 'fighting,' or the like, would be sufficient." The special presentment in the case at bar was sufficient, without specifying the precise language used by the accused or designating the person with whom he fought; and there was no error in overruling the demurrer.

2. The petition for certiorari alleged that, "Over the objection of defendant's counsel, said objection being upon the three grounds following, to wit: (1) The evidence offered is irrelevant under the allegations in the special presentment;

(2) There is a material variance between the evidence offered and the allegations in the special presentment; (3) The evidence offered discloses the fact that the alleged disturbance took place after the adjournment of the divine services and while the people were engaged in the secular employments of feeding their mules and horses, and while they were preparing and eating dinner; that said evidence was inadmissible, because that part of the statute which says, 'and until they are dispersed from such place of worship,' although embodied in the criminal code, was improperly put there by the codifiers and is not the law of this State, and said evidence was irrelevant for the purpose of establishing the truth of the allegations in said special presentment,—all and singular the following evidence from the following-named witnesses was introduced by the State, the court overruling all and singular the objections interposed, as aforesaid, at the time said evidence was offered." Then follows the testimony of all the witnesses who testified in behalf of the State. This allegation of the petition means, substantially, that all the testimony of all the witnesses who were introduced by the State was objected to because it was irrelevant, for the reasons stated.   It is very clear that such an objection can not be considered, if any of the testimony of any of the witnesses was pertinent and admissible.   In *Powell* v. *Augusta & Summerville R. R. Co.*, 77 *Ga.* 196, it was held: "Unless all the evidence of a witness is objectionable, the particular part which is objectionable should be specified in the motion for a new trial or in the bill of exceptions.   This may be done either by quotation or by reference to the brief of evidence; but if by reference, it should be definite and distinct, so that this court could know where to begin and when to stop."   The record in the case at bar discloses that even if any of the testimony of the witnesses introduced by the State was irrelevant, much of it was manifestly pertinent; and consequently there was no error in overruling this ground of the certiorari.

3. Another ground of the certiorari was, that the trial judge refused to give in charge to the jury the following written request of counsel for the accused:   "It is not sufficient to show that there was a disturbance, if it also be made to satisfactorily

appear from the evidence that the divine services had been dismissed and the congregation were engaged in secular affairs, such as feeding horses, preparing and eating dinner, and doing other things of like character, when the disturbance was created. It must be divine service that is disturbed and interrupted, in order to constitute the offense charged in this indictment." Under a Virginia statute to the effect that, "If any person shall, on purpose, maliciously, or contemptuously, disquiet or disturb any congregation assembled in any church, meeting-house, or other place of religious worship," etc., it was held : "The statute is applicable not only to disturbances which are made whilst the religious services are progressing, but to disturbances made whilst the congregation is assembled for religious worship; though it be at night after the religious services are closed for the day, and the congregation has retired for rest." Com. *v.* Jennings, 3 Gratt. 624. The court in that case said : "There is nothing, either in the language, or in the spirit and intention of the law, to justify the construction that the disturbance contemplated by it can only occur *during* divine service. It may occur during divine service, and is then certainly an offense against the statute ; but it is equally an offense, when it occurs either *before* or *after* service, provided the congregation be assembled *for* religious worship." The statute in Texas was, " Any person who, by loud and vociferous talking or swearing, or by other noise (or in any other way), wilfully disturbs any congregation assembled for religious worship and conducting themselves in a lawful manner," etc. In Dawson *v.* State, 7 Tex. App. 59, the statement of facts shows that, after the congregation was dismissed and the pastor and part of the congregation were on their way home, the accused, with others, engaged in a broil, and the accused, by cursing and swearing, disturbed those then on the ground ; and that the accused behaved in an orderly manner so long as the pastor was present on the ground. The court said: "We are of opinion that the object, purpose, spirit, and letter of the law are to protect the religious assembly from disturbance before and after service, and so long as any portion of the congregation remains on the ground." To the same effect are Williams *v.* State, 3 Sneed

(Tenn.); 313; Kinney v. State, 38 Ala. 224; Lancaster v. State, 53 Ala. 398; State v. Lusk, 68 Ind. 264; Ball v. State, 67 Miss. 358; Love v. State (Tex. App.), 29 S. W. Rep. 790. Following these authorities, which we believe correctly establish the law on the subject, a congregation of persons which, as the evidence discloses, had been lawfully assembled under a bush-arbor for divine service, could, in legal contemplation, be "disturbed" by such acts as are specified in section 418 of the Penal Code, although the persons composing the congregation may have been dismissed from the arbor, but remained assembled around it for the purposes of administering to the wants of their domestic animals and preparing and eating their own dinners. And this is true whether the words, "and until they are dispersed from such place of worship," embraced in that section, and which are codified from the act of 1859 (Acts of 1859, page 62), do or do not properly, in terms, constitute a part of the law relating to the offense therein defined.

4. The presentment charged that the accused disturbed a congregation of persons lawfully assembled for divine service at Concord Church, a Primitive Baptist church, in Jasper county, etc. The proof on the trial was, that the congregation disturbed by the accused was one lawfully assembled for divine service upon the day named in the presentment, and in Jasper county, at a bush-arbor where a Primitive Baptist Association was being held, and some 170 or 200 yards distant from Concord Church, and that no divine service was held at such church upon that day. The petition for certiorari alleged that the verdict was contrary to the evidence, without evidence to support it, and that there was a fatal variance between the evidence and the charge in the special presentment. Blackstone says of the indictment, "The time and place are also to be ascertained by naming the day and township in which the fact was committed; though a mistake in these points is, in general, not held to be material, provided the time be laid previous to the finding of the indictment, and the place be within the jurisdiction of the court, unless where the place is laid not merely as a venue, but as part of the description of the fact." 4 Com. 306. As the offense with which the accused was charged in the case at bar

has no essential connection with the place where it was committed, it was unnecessary to allege that the congregation disturbed was assembled at any particular place in Jasper county. In State v. Smith, 5 Harr. (Del.) 490, it was held that "indictments for disturbing religious worship need not specify the *place.*" The general rule is, that place is only essential upon the question of jurisdiction; and even where it is incorrectly stated, if the evidence establishes that the offense was committed within the jurisdiction of the court, the variance will not be fatal. 2 Hawk. P. C. 337; 2 Hale's P. C. 181; 2 Russ. Cr. 800; 1 Whart. Cr. L. § 280. Where, however, the place is stated in the indictment as matter of local description, or, as Blackstone says, "part of the description of the fact," and not as venue, it becomes necessary to prove it as laid. Whart. Cr. Ev. § 109; Roscoe's Cr. Ev. 110, 111. In the case before us, the place "at Concord Church," where it is alleged the congregation was assembled, is matter of local description; it identifies the particular congregation alleged to have been disturbed, and was therefore necessary to be proved as laid. Was it proved? The witnesses testified that no divine service was held "at" the church upon the day the congregation was disturbed. They all swore, however, that upon the day named in the special presentment there was a congregation of persons lawfully assembled for divine service at a bush-arbor, where a Primitive Baptist Association was being held, which was about 170 or 200 yards distant from Concord Church, a Primitive Baptist church, and that the accused disturbed this congregation in the manner charged in the presentment. The witnesses, in testifying that no divine service was held "at" the church upon the occasion named, must evidently be understood as meaning that no such service was then held *in* the church or its immediate proximity. The word "at" is somewhat indefinite; it may mean "in" or "within," or it may mean "near." Its primary idea is nearness, and it is less definite than *in* or *on*. *At* the house may be in or near the house. Webst. Dict. The word *at* is used "to denote near approach, nearness or proximity." Richardson's English Dict. It is a relative term, and its signification depends largely upon the subject-matter in relation to which it is

48

used and the circumstances under which it becomes necessary
to apply it to surrounding objects. 3 Am. & Eng. Enc. L.
168, and cases cited in note 1. So where a contract required a,
railroad company to construct its track so as to intersect another
line *at* a certain city, the court held, in the absence of proof as
to the meaning of the parties, that an intersection near the city,
but not necessarily within the corporate limits, would be a sub-
stantial compliance. Ft. Worth & N. O. Ry. Co. *v.* Williams,
82 Tex. 553. In Frey *v.* Ft. Worth & R. G. Ry. Co., 24 S. W.
Rep. 950 (3 Tex. Civ. App.) it was held, that a contract by a
railroad company to establish its depot *at* a specified town is
complied with by locating it at a convenient distance from the
business portion of the town, and is controlled more by the
buildings composing the town than by the corporate limits as de-
fined in the charter. So "at or near" a certain spot upholds the
location of the terminus of a railroad 2,475 feet distant there-
from. Fall River Co. *v.* Old Col. R. R. Co., 5 Allen, 221. "At
and near" may be considered synonymous. Bartlett *v.* Jenkins,
22 N. H. 63. Giving the word *at*, as used in the special pre-
sentment in the case before us, the signification of nearness, we
are of opinion that the evidence discloses that the congregation
disturbed was assembled sufficiently near Concord Church to be
considered as assembled *at* the church. The evidence was suffi-
cient to support the allegations in the presentment, and there
was no error in overruling the certiorari.

    *Judgment affirmed. All the Justices concurring, except*

Lumpkin, P. J., dissenting. The presentment charged that
the accused disturbed a congregation of persons lawfully as-
sembled for divine service "at" Concord Church, a Primitive
Baptist church, etc. The testimony of all the witnesses was,
that no divine services were held at such church on the day the
disturbance occurred; that no congregation was assembled at
the church on that day for divine services, but that a Baptist
association was being held at the time at a bush-arbor, about
two hundred yards distant from the church; that the cursing
and fighting with which the accused was charged took place at
or near the arbor, and that the congregation disturbed was the
one assembled at the arbor. The witnesses all testified that the

arbor was not at the church. Their attention was specifically called to this very matter. I can not undertake to say that they did not know what they were swearing about, or did not mean exactly what they said, especially as there was no affirmative evidence to the contrary of what they swore. No witness testified that the arbor was on land constituting a part of the church grounds or precincts, or that the arbor was at the church, or that the congregation disturbed was assembled at the church. I therefore think that the verdict was contrary to the evidence, and that for this reason the overruling of the certiorari was erroneous.