## 1704.   OXFORD KNITTING MILLS *v.* AMERICAN WRINGER COMPANY.

It is not error to rule out evidence tending to support a plea which is bad in substance.

Complaint—appeal, from Pike superior court—Judge Reagan. January 19, 1909.

Submitted March 30,—Decided October 5, 1909.

The American Wringer Company sued the Oxford Knitting Mills for the purchase-price of six universal iron-frame wringers. The defendant admitted that the wringers had been received and that they were in every way according to contract, but it set up by way of recoupment that it had instructed the plaintiff to ship the wringers from the plaintiff's factory at Woonsocket, Rhode · Island, to the defendant at Barnesville, Georgia, via the Ocean Steamship Company to Savannah, and that the plaintiff, disregarding these instructions, shipped the wringers by another route, whereby they were delayed in transportation about twenty days longer than if they had been shipped by the Ocean Steamship route. This delay had caused the defendant the loss of the interest on the amount of capital invested in its knitting mills, and also the loss of the fixed charges of operating the mills, such as the salaries of the president, engineer, head of the finishing department, and shipping clerk; also the mills were insured, and under the insurance contract it was necessary to keep the steam up all the time, and pay a fireman; and the salary of the fireman and also the coal in keeping up the steam had been lost. It was alleged that all the items of damage ought to be recouped against the plaintiff, because if the wringers had been shipped by the designated route, the mills would not have been closed down. In or-

der properly to understand the defendant's full contention, it should be stated that the knitting mills were in full operation at the time the wringers were ordered from the plaintiff. The order was given on June 21, 1907, with a request that the shipment be rushed forward. On June 13 the wringer company had written the knitting mills that it would require two or three weeks to manufacture the wringers after the receipt of the order. On July 2 the knitting mills inquired when the wringers would probably be shipped, and the wringer company replied: "We expect to have three of your wringers ready for shipment on the 12th instant, the other three we will have ready about a week later. We do not think we can do any better than the above, but if we find it possible to get these wringers out sooner, you can rest assured that we will do so, and will make shipment of them promptly as soon as finished. Our factory has been shut down since the 29th ultimo, and while we expect to start up next week, there is nothing certain about this, and we are using the few men we have here at the factory in getting out your wringers, but of course on account of the shut down we are handicapped about pushing them through as fast as we would like." On July 13 the knitting mills closed down, in order to make some repairs in the bleaching room and also to remove the old machinery to make place for the new wringers. The wringers did not arrive until about twenty days after that time, and the mills were closed during the interim. When the wringers did arrive they were accepted and installed. On September 23 the wringer company requested payment for the wringers, and the knitting mills replied as follows: "Your favor of September 23d received. On account of your Woonsocket office shipping our wringers contrary to our instructions caused us a shut down of several weeks, consequently we lost out on delivering merchandise to our customers. On account of this loss we were seriously inconvenienced in having our shipments delayed, and it will be about November 1st to 10th before it will be convenient for us to close this matter up. We trust this will be satisfactory." The error in routing the wringers was due to an honest mistake of the shipping clerk of the wringer company.

At the trial the judge ruled out all evidence tending to support the plea of recoupment as to interest on the capital invested in the knitting mills and the fixed charges of operation. The

knitting mills had gone to an expense of about $25 for hotel bills, railroad fare, and telegrams in tracing the wringers.  This item was not ruled out.  The jury returned a verdict for the purchase-price of the wringers, less the expense of $25 just referred to. The motion for a new trial by the defendant contains the ground that the judge erred in ruling out the evidence as to interest and fixed charges.  One ground complains that the judge erred in ruling out a bill of lading, but the judge certifies that there was no proof of the execution of the bill of lading or of its indentification with the shipment in question.

*E. C. Armistead,* for plaintiff in error.  *J. M. Smith,* contra.

RUSSELL, J.  (After stating the foregoing facts.)

Where a plea is bad in substance, it is not error to rule out evidence tending to support it.  *Kelly* v. *Strouse,* 116 *Ga.* 872 (43 S. E. 280).  The only question presented, therefore, for our determination is whether or not the items of damage, to wit, interest on the amount invested in the factory, and the fixed charges of operating the factory during the period it was closed down, could be properly recouped against the plaintiff in this case.  In no event would interest on the amount invested in the knitting mills be the proper measure of damage in a case of this kind.  If the manufacturer of the wringers could be held liable at all for the closing down of the factory, the defendant could not recover interest, for the simple reason that interest was not lost.  *Albany Phosphate Co.* v. *Hugger,* 4 *Ga. App.* 771 (62 S. E. 533).  The other items of damage set up present a different question, but we do not think they are recoverable against the plaintiff.  The plaintiff did not agree to deliver the wringers at any particular time, and even if it had agreed to do so it could hardly have been in the contemplation of the parties that defendant would shut down its factory before the wringers arrived, remove the old machinery and send its employees on a jaunt of their own at full pay.  Furthermore, when the wringers did not arrive as the defendant anticipated, it does not appear that the old machinery which had been removed could not have been replaced and the mills opened up again.  Ordinary diligence to lessen damage would have required the defendant to replace the six old machines, and continue the operation of the knitting mills.  Delays in shipments will occur, and one who in anticipation of the arrival of a shipment closes down his factory, removes the old machinery, pays

his employees full wages, and keeps his boiler under steam so that his insurance policy will not lapse, while he awaits the arrival of the shipment, should blame no one but himself if the shipment does not arrive promptly. Certainly he should not seek to charge all this loss to the plaintiff, who had made an honest mistake in routing a shipment which he had not agreed to deliver at any particular time. Furthermore it does not appear that the defendant's factory could not have been operated without these wringers. See *Christophulos Café Co.* v. *Phillips,* 4 *Ga. App.* 822 (62 S. E. 562) ; *Jester* v. *Bainbridge State Bank,* 4 *Ga. App.* 469 (61 S. E. 926).

*Judgment affirmed.*