## 4980.  SNELL, alias JENKINS, *v.* THE STATE.

1. In the indictment of an accessory before the fact it is not necessary to state the manner of committing the offense. It is sufficient to charge generally that he feloniously, wilfully, and unlawfully did procure, counsel, and command the principal to commit it. The indictment in the present case was good as against both the general and the special grounds of the demurrer.

2. The verdict is without evidence to support it, and therefore is contrary to law. (HILL, C. J., dissents.)

DECIDED AUGUST 11, 1913.

Indictment for assault with intent to murder; from Muscogee superior court—Judge Gilbert.  May 6, 1913.

The plaintiff in error was indicted as an accessory before the fact to an assault with intent to murder, under section 81 of the Penal Code, which reads as follows: "Any person who shall administer to any woman, pregnant with a child, any medicine, drug, or substance whatever, or shall use or employ any instrument or other means, with intent thereby to destroy such child, unless the same shall have been necessary to preserve the life of such mother, or shall have been advised by two physicians to be necessary for such purpose, shall, in case the death of child or mother be thereby produced, be guilty of an assault with intent to murder." The indictment (omitting mere formal parts) is in the following language: "charge and accuse W. F. Whitehead, of the county and State aforesaid, with the offense of assault with intent to murder, and Claud B. Gullatt, Tom Pace, and William Snell, alias 'Bill Jenkins,' with the offense of accessory before the fact to said assault with intent to murder; for that the said W. F. Whitehead, on the 20th day of July in the year 1912, in the county aforesaid, did then and there, unlawfully and with force and arms, use and employ a certain instrument and instruments to the grand jurors unknown, and by pressing upon the person of Ruby Osborn, she being then and there a woman pregnant with a child, said child being so far developed in its mother's womb as to be ordinarily called 'quick,' and said instrument and instruments and said pressure being then and there used and applied with intent thereby to destroy such child, and by the use of such instrument and instruments and by such pressure the death of such child was thereby produced, the use of said instrument and instruments and said pressure not being then and there necessary to preserve the life of

said mother, nor having been then and there advised by two physicians to be necessary for such purpose; and for that the said Claud B. Gullatt, Tom Pace, and William Snell, alias 'Bill Jenkins,' being absent at the time of the commission of the crime aforesaid by the said W. F. Whitehead, did yet then and there unlawfully, feloniously, and wilfully procure, counsel, and command the said W. F. Whitehead to commit the crime of assault with intent to murder aforesaid. And the jurors aforesaid, upon their oaths aforesaid, do say that the said W. F. Whitehead, in manner and form aforesaid, unlawfully and with force and arms did commit the crime of assault with intent to murder, and that the said Claud B. Gullatt, Tom Pace, and William Snell, alias 'Bill Jenkins,' being absent at the time of the commission of said crime of assault with intent to murder, did then and there unlawfully, feloniously, and wilfully procure, counsel, and command the said W. F. Whitehead to commit the said crime in manner and form aforesaid, contrary to the laws of said State," etc.

On this indictment the principal defendant, W. F. Whitehead, was tried and convicted. When the plaintiff in error, William Snell, alias "Bill Jenkins," was arraigned he entered a demurrer to the indictment, on the following grounds: "1st. Because said indictment sets forth no crime and charges no offense under the laws of said State against this defendant. 2d. Because the charges and allegations constitute no crime under the laws of said State. 3d. Because the charges and allegations in said indictment are too vague and indefinite, and fail to put defendant on notice as to what specific conduct he has been guilty of, constituting said offense of accessory before the fact in said charge, and fails to put him on notice as to how and in what manner he has conspired and co-operated with the principal and with the other accessories named in said indictment, in the commission of said crime. 4th. Because the charges and allegations in said indictment fail to put this defendant on sufficient notice to enable him to prepare his defense, in that they are too vague and indefinite and fail to state where, when, and how this defendant 'procured' said W. F. Whitehead to commit said crime; whether by hiring with money or other things of value, by inducement, persuasion, or otherwise. 5th. Because the charges and allegations in said indictment fail to put this defendant on notice sufficient to enable him to prepare his defense, in

that they are too vague and indefinite and fail to state where, when, and how this defendant did 'counsel' said Whitehead to commit said crime, and what means were used to counsel said Whitehead in the commission of said crime. 6th. Because the charge that this defendant did 'command' the said Whitehead to commit said crime fails to set forth where and how this defendant commanded the commission of said offense. 7th. Defendant specially demurs to the following language in said indictment, to wit: 'Did then and there, unlawfully and with force and arms, use and employ a certain instrument and instruments to the grand jurors unknown, and by pressing upon the person of Ruby Osborn, she being then and there a woman pregnant with a child, said child being so far developed in its mother's womb as to be ordinarily called "quick," and said instrument and instruments and said pressure being then and there used and applied with intent thereby to destroy said child, and by the use of said instrument and instruments and by such pressure the death of said child was thereby produced;' because said language and charges do not set forth with sufficient particularity and definiteness to put this defendant on notice as to what kind or character of instrument and instruments were used, and does not set forth how said instruments were used, and does not set forth where said instrument and instruments were used, and does not set forth on what part of the person they were used by the said W. F. Whitehead; because said language and charges fail to set forth with sufficient particularity and definiteness as to what kind of pressure was used, nor how said pressure was used, nor upon what part of the person of Ruby Osborn said pressure was applied, nor with what means or instrument said pressure was applied and used." The trial judge overruled the demurrer, and exceptions pendente lite were duly filed. The accused was thereafter convicted, his motion for a new trial was overruled, and he excepted.

*A. W. Cozart,* for plaintiff in error.

*George C. Palmer, solicitor-general,* contra.

Hill, C. J. (After making the foregoing statement.) The indictment was in the language of the statute; and it is declared in the Penal Code (1910), § 954, that "every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct, which states the offense in the terms and language of this

code, or so plainly that the nature of the offense charged may be easily understood by the jury." While the section here quoted was intended to simplify criminal pleading, and in fact greatly does so, yet it was not intended by this section that it should not be necessary to set forth the offense and the time and place of committing the same with sufficient certainty of description to put the accused on notice of the crime with which he is charged and to enable him to make his defense. *Burkes* v. *State, 7 Ga. App.* 39 (65 S. E. 791) ; *Johnson* v. *State, 90 Ga.* 441, 444 (16 S. E. 92). In other words, this section was not intended to dispense with the substance of good pleading, but was intended simply to do away with mere technical allegations and useless repetition. We think, therefore, that the indictment was certainly good as against a general demurrer. The allegations are full, clear, and distinct as to the principal perpetrator of the crime. The objection that it is too indefinite and vague, in that it fails "to set forth with sufficient particularity and definiteness to put the defendant on notice as to what kind or character of instrument or instruments were used, and does not set forth how said instruments were used, and does not set forth on what parts of the person they were used" by the principal perpetrator of the crime, is without merit. Even as to the principal perpetrator it was entirely sufficient to allege that in the act he used some instrument or instruments which were to the jurors unknown. Even if the instrument or instruments were known, it was not necessary to describe them or set them forth with particularity, or to allege anything further in regard to them than that the crime was committed by the use of an instrument or instruments by the principal offender. It was wholly immaterial to allege upon what part of the person of the female the instruments were pressed. If the pressure of the instruments upon any part of the person produced a criminal abortion, that would be sufficient; and it is not too much to expect of the intelligence of an ordinary jury that they would fully understand that the use of the instruments and the pressure of the instruments was upon that part of the body of the female upon which such use and pressure would accomplish the crime perpetrated. It was certainly not essential to tell in the indictment how the principal offender used the instruments ; any use of the instruments upon the person of the female which produced the criminal result would support this allegation

11

of the indictment. The means or manner of effecting the criminal intent, or the circumstances evincive of the design with which the act, illegal in itself, was done, are generally considered to be matters of evidence to the jury to demonstrate the intent, and not necessary to be incorporated in the indictment. *Travis* v. *State*, 83 *Ga.* 372 (9 S. E. 1063) ; Joyce on Indictments, § 293. And it is an elementary principle of pleading that it is never necessary to allege in an indictment mere matter of evidence, unless it alters the offense. Clark's Crim. Proc. 166; Joyce on Indictments, § 295; *Minter* v. *State*, 104 *Ga.* 743, 748 (30 S. E. 989) ; *Brown* v. *State*, 116 *Ga.* 559, 562 (42 S. E. 795).

In the case of *Hall* v. *State*, 133 *Ga.* 177, 178 (65 S. E. 401), the indictment alleged that the defendant committed the offense (assault with intent to murder) "by stabbing the said Henry Howell with a certain knife and with other sharp instruments to the grand jury unknown." The defendant demurred to the allegation that the stabbing was done "with other sharp instruments to the grand jury unknown," because it was too general to put the accused upon proper notice as to what instrument was alleged to have been used by him; also because it was too indefinite in that the weapon alleged to have been used was not particularly set forth. It was held that there was no merit in the demurrer. See, also, *Hicks* v. *State*, 105 *Ga.* 627 (31 S. E. 579). In *Malone* v. *State*, 77 *Ga.* 767, Chief Justice Jackson, speaking for the court in passing upon the sufficiency of the indictment, said: "The indictment is good. It is charged that with the knife, a weapon likely to produce death, the stabbing was done with intent to kill and murder." In other words, the language was sufficiently specific to show that the knife was used to stab the decedent. It was immaterial in what part of his person the wound was inflicted. The allegations in the indictment in the present case are almost identical with those in the case of Commonwealth *v.* Snow, 116 Mass. 47, where the defendant was convicted of producing a criminal abortion. The following part of the indictment was held to be good: "a certain instrument, the name of which is to the jurors unknown." "In an indictment for assault with intent to murder, at common law, or under a statute which does not specify the instrument, it has been held unnecessary to state the instrument or the means made use of by the assailant to effectuate the murderous intent." 1 Wharton's

Crim. Law (10th ed.), § 644; Wharton's Crim. Pl. & Pr. § 159; State v. Williams, 52 N. C. 446 (78 Am. D. 248). Mr. Bishop, in his New Criminal Procedure, says: "But in the absence of anything in the statute, the manner of the assault or of the beating, or the kind of weapon, need not be stated." 3 Gr. Ev. (16th ed.) § 49; 3 Bishop's New Crim. Proc. (2d ed.) § 77 (3). "In a prosecution for administering a drug or medicine to a pregnant woman for the purpose of producing an abortion, it is not necessary to allege what drug or medicine was administered. An averment that it was a drug . . . calculated to produce an abortion is sufficient." Watson v. State, 9 Tex. App. 237. The indictment "need not describe the instrument used or manner of use, provided it alleges the kind or character of the instrument, or that the manner of use is unknown." State v. Longstreth, 19 N. D. 268 (121 N. W. 1114, Ann. Cas. 1912D, 1317). The allegation of the indictment in the present case is entirely sufficient under the statute (Penal Code, § 84), for the statute says: "Any person who shall administer to any woman, pregnant with a child, any medicine, drug, or substance whatever, or shall use or employ any instrument or other means, with intent thereby to destroy such child," with criminal intent, is guilty of assault with intent to murder. It is wholly unnecessary to describe in the indictment the manner in which the instruments were used. "It will be presumed that they were used upon her body." People v. Wah Hing, 15 Cal. App. 195 (114 Pac. 416); 2 Wharton's Crim. Law (11th ed.), § 786. We therefore conclude that it is abundantly established by authority that the indictment in the present case is not subject to the objection urged against it, either as to the character of the instruments that were used, how they were used, or upon what part of the person of the woman they were used.

Now, as to the accessory before the fact: It is distinctly alleged, in the language of the statute, that, being absent at the time of the commission of the crime of assault with intent to murder, the accused, "did then and there unlawfully, feloniously, and wilfully procure, counsel, and command" the principal perpetrator to commit the crime as set out in the indictment. The objection to this language is that it does not specifically state where, when, and how the accessory before the fact named procured, counseled, or commanded the principal to commit the crime. These words must be taken in their popular sense; and their use sufficiently informs

the accessory before the fact of the crime charged against him, to wit, that he did either counsel, command, or procure the commission of the crime by the principal accused. How it was done was a matter to be shown by the evidence. The demurrer on this point, we think, is fully controlled by the decision of the Supreme Court in the case of *Rawlins* v. *State,* 124 *Ga.* 31, 41 (52 S. E. 1), as follows: "The indictment charges that the four principals committed the offense of murder upon named persons, and then proceeds to charge that J. G. Rawlins and Frank Turner, being·absent at the time of the commission of the crime, did 'unlawfully, feloniously, wilfully, and of their malice aforethought procure, counsel, and command' the alleged principals to commit the crime. Complaint is made that there is nothing in this language which charges the alleged accessories before the fact with any act which would make them accessories. That which makes one an accessory before the fact is the procuring, counseling, and commanding another to commit a crime, and this is the only act necessary to constitute the offense; and when it is charged in the language of the statute that the accused did procure, counsel, and command the alleged principal to commit the crime, he is charged in terms with that which constitutes the offense, and it is hard to conceive how the charge could be made more clear and more specific." See, also, 3 Bishop's New Crim. Proc. (2d ed.) § 8; *Fulford* v. *State,* 50 *Ga.* 591. We conclude that the trial judge properly overruled the demurrer on all the grounds therein stated, both general and special.

On the evidence the opinion of the majority of the court, prepared by Judge Pottle, is as follows: "Section 45 of the Penal Code contains, substantially, the common-law definition of an accessory before the fact. It says: 'An accessory before the fact is one who, being absent at the time of the crime committed, doth yet procure, counsel, or command another to commit a crime.' The accused was indicted as an accessory before the fact, and it is well settled that one so indicted can not be convicted upon evidence which shows him to have been a principal, either in the first or the second degree. The question, therefore, upon the merits, is whether the accused procured, counseled, or commanded Dr. Whitehead to commit the abortion upon the female named in the indictment. It may be conceded that if he had advised another to procure Dr. Whitehead to commit the crime, he would have been as guilty as

if he had directed, incited, or counseled the perpetrator of the crime to commit it; but in the opinion of the majority of the court the evidence does not show that the accused procured the commission of the crime, within the meaning of section 45 of the Penal Code. There is no suggestion in the evidence that the accused had any conversation upon the subject with either Gullatt or Dr. Whitehead, or that he, either directly or indirectly, counseled or advised either of those persons to commit this crime. If the conviction can be supported at all, it must rest solely upon the fact that the accused furnished the room in which the crime was committed, with knowledge, at the time it was furnished, that a criminal abortion was to be performed. This was his sole connection with the offense. He did not advise it, nor even in a remote way suggest to any person connected with the criminal transaction that an abortion should be performed. We do not think that mere knowledge that a crime is contemplated, and the mere furnishing of a room in which that crime is to be committed, will render the owner of the room an accessory before the fact to the crime. 'Any degree of incitement with the actual intent to procure the commission of the crime is sufficient;' but the authorities are all to the effect that there must be 'some degree of direct incitement.' See 1 Russell on Crimes (7th Eng. ed.), 117, with references to numerous English authorities. For example, the author refers to the case of R. v. Fretwell, L. & C. 161. In that case the prisoner was requested by a pregnant woman, who sought to procure an abortion, to obtain, and he did obtain for her, corrosive sublimate; being influenced by a threat that she would destroy herself if she did not get it. He knew the purpose for which she wanted it, but, though he gave it to her for that purpose, he was unwilling that she should use it, and did not administer it to her nor cause her to take it. She did take it, however, and died in consequence. It was held that the prisoner could not be convicted as accessory before the fact. In another case the prisoner held stakes at a prize-fight, which resulted in the death of one of the combatants. Cockburn, C. J., said: 'To support an indictment of being accessory before the fact of manslaughter there must be an active proceeding on the part of the prisoner; he is perfectly passive here; all he does is to accept the stakes.' R. v. Taylor, L. R. 2 C. C. 148. In *Hately* v. *State,* 15 *Ga.* 346, it is ruled substantially that the prisoner must have incited the commission of the crime before he can be convicted as accessory before the fact.

"The evidence in the present case does not show that the prisoner participated in the criminal offense performed by Dr. Whitehead. He neither counseled it nor advised it, nor procured its commission, and it does not even appear that he was willing for the crime to be committed, except that he did permit the use of a room in his house in which the crime was committed. The prisoner was conducting an assignation house and was in the habit of letting his rooms for immoral purposes, and the woman and the putative father of the child occupied this room together for two days before the abortion was committed. The evidence shows that at this time the fact that the woman was pregnant could not have been ascertained by casual examination. After the crime was committed the accused cared for the woman, furnishing her food and necessary medical attention, all at his own expense, and simply, as the evidence discloses, as an act of humanity. He was in no way concerned in the criminal act. There was no motive for its commission by him through the agency of another, and no reason whatever, as shown by the evidence, why he should have been interested in having the criminal abortion performed. If he was present in a legal sense when the crime was committed, and aided and abetted it, he could be convicted as a principal in the second degree. Merely aiding the commission of the offense by furnishing a room within which the crime could be committed is not, without more, such a procuring of another to commit the crime as would render the accused guilty as an accessory before the fact. See 12 Cyc. 191 (2)."

I do not concur in the opinion of my associates that the evidence was not sufficiently conclusive to support the charge against the accused of being an accessory before the fact. The distinctions between principals in the first and second degree and accessories before the fact are fanciful rather than substantial. All are deemed equally guilty and are punished alike. And it has been held that on an indictment against one as principal in the first degree, if the evidence warrants it, a verdict may be had against him as either a principal in the second degree or an accessory before the fact. In some of the States the common law has been changed by statute so as to abolish these distinctions, and accessories before the fact are considered as principals. 1 Wharton's Crim. Law (11th ed.), 338, note 6. Especially should this distinction be ignored when the criminal act is the result of a conspiracy or confederacy; for every

person entering into a conspiracy or common design is deemed in law a party to all acts done by any of the other parties in furtherance of the common design. All are equally guilty where the separate acts of each contributed to produce the criminal act, although personal knowledge or participation in every act of each is not necessary, provided they all tend to the consummation of the same criminal act. The facts in the present case, in my opinion, prove the existence of a conspiracy between the physician, the putative father, and the plaintiff in error, the owner of the house where the criminal abortion was performed. While this may be true, the statute of this State, which still preserves the common-law distinction, characterizes these offenses differently, though punished alike. Whitehead, the physician, who actually performed the physical act of causing the abortion, was the principal perpetrator, and Gullatt, who hired the physician to produce the abortion, and the accused, who rented the room and bed to Gullatt for the purpose, were accessories before the fact. Assuming the truth of the allegations, there can be no doubt as to the guilt of Whitehead and Gullatt as charged.

The majority of the court think that the evidence does not show such participation in the common criminal design by the accused as to warrant his conviction. In coming to this conclusion they construe the general words of the definition, "procure, counsel, and command" the commission of the criminal act, necessary to make one an accessory before the fact, as meaning to "incite," "encourage," "cause." The words "counsel and command" have no application to the facts, but in my opinion the word "procure," used in the definition, is broad enough to embrace the acts and conduct of the accused. I am strengthened in this view by the definition in section 44 of the Penal Code: "An accessory is one who is not the chief actor in the offense, nor present at its performance, but in some way concerned therein, either before or after the act committed." This definition is certainly broad enough to include the acts and conduct of the accused, if its meaning is not restricted by the section following which defines an accessory before the fact as "one who, being absent at the time of the crime committed, doth yet procure, counsel, or command another to commit a crime." The two sections should be construed together; and, so construed, one who aids and abets the commission of a crime by knowingly con-

tributing to its commission would seem to "procure" its commission, in the meaning of the statute. There is evidence that the accused, with knowledge that a criminal abortion was to be produced, rented a room and a bed for the purpose, and hired a nurse to be present and attend the woman before, at, and after the commission of the crime. It is probable that if the accused had been in his house when the crime was committed, for the purpose of being so near as to render any necessary assistance or to prevent any possible interruption, he would have been a principal in the second degree, being constructively present; but as to this the evidence is silent. In renting the room, furnishing the bed and the nurse, and taking care of the woman before the crime was committed, he contributed in a very substantial manner to its commission, and, in my opinion, these acts made him an accessory before the fact. In Reg. *v.* Hollis and Blakeman, 12 Cox's Crim. Cas. 463, a case of criminal abortion, a conviction of Blakeman as an accessory before the fact was upheld, though the only evidence against him was the furnishing of a room with knowledge that an abortion was to be caused by Hollis, the principal; Bovill, C. J., saying: "Hollis found the drug and Blakeman the room where the prosecutrix was taken to, and in a short time the effect intended was produced." In that case the statute defining an accessory before the fact was identical with the one in our Penal Code. In Commonwealth *v.* Follanshee, 155 Mass. 274 (29 N. E. 471), a case of criminal abortion, it was held that one was not an accessory before the fact because she procured ether for the accused, which he administered to a pregnant woman for the purpose of producing an abortion; the evidence not showing that "she knew the purpose for which it was to be used."

The two cases relied upon by Judge Pottle are distinguishable on the facts from the two cases above cited as well as from the instant case. In R. *v.* Fretwell, L. & C. 161, although the accused gave the drug to the pregnant woman at her request after her threat to take it to cause a miscarriage, the court held that he was not guilty of being an accessory, because "he was unwilling that she should use it, and did not administer it to her nor cause her to take it." In R. *v.* Taylor, 2 Cr. Cas. Res. 147, the court held that "A stakeholder who takes no part in the arrangements for a prize-fight, and does nothing more than hold the stakes and pay

them over to the winner, is not an accessory before the fact to the manslaughter of one of the combatants." The essential factors of guilt, to wit, knowledge that a crime was to be perpetrated, and aiding and abetting its commission, were lacking in those cases. Here the accused knew that a criminal abortion was to be committed, and furnished for hire a secret, private, convenient place for that purpose. For these reasons, while the question is not free from doubt, I think the evidence authorized the verdict.

*Judgment reversed.*

RUSSELL, J., concurring specially. I agree to the reversal of the judgment of the lower court, upon the ground that the verdict was contrary to the evidence; but I am further of the opinion that the indictment was demurrable. One charged as an accessory has, in common with all who are accused of the crime, the right to be definitely informed as to the precise nature of the transaction as to which he is called on to defend.