PITTSBURGH PLATE GLASS CO. v. KERLIN BROS. CO.

(Circuit Court of Appeals, Sixth Circuit. May 19, 1903.)

No. 1,145.

1. SALE—CONTRACT—WHAT CONSTITUTES.

Plaintiff offered defendant prices on designated kinds and quantities of secondhand pipe, and stated that he would sell the same subject to inspection, and also stated where the pipe was located, and that the quotations would stand for a specified time. Defendant offered to take a certain quantity, less than the amount stated by plaintiff, of a particular kind, at a price named, and subject to his inspection. Plaintiff accepted the offer. *Held* to constitute a contract for the delivery of the amount and kind of pipe mentioned by defendant, and not merely the quantity plaintiff had in the designated places, which defendant might select.

2. SAME—PART PERFORMANCE—RECOVERY.

A seller, under contract to deliver to the buyer a designated quantity of goods, who delivers only a part, which are accepted, may recover the value of the goods delivered, less the damages sustained by reason of his failure to perform the entire contract.

3. SAME—RECOVERY OF PRICE—EVIDENCE—ADMISSIBILITY.

In an action for the recovery of the price of goods sold, defendant claimed damages for the failure to deliver the balance called for by the contract, and offered to prove by a witness charged with inspecting the goods that, after he had inspected the goods sued for, the person in charge for plaintiff prevented the inspection of the balance. A witness for plaintiff had testified that S. was its superintendent, with authority to bind it. Defendant's witness testified that he thought the man in charge was S., but could not recognize the man whom plaintiff had stand up as the one in charge. *Held* error to strike out the testimony of defendant's witness, in the absence of evidence that the man in the audience was S., and not the one who refused to allow the inspection of the goods.

4. AGENT—PRESUMPTIVE AUTHORITY.

One in charge of goods for the purpose of tendering them to the buyer for inspection, who declined to do so, presumptively had authority to bind the seller, until the contrary was shown.

5. EVIDENCE—DECLARATIONS—RES GESTÆ.

The statements made by one in charge of goods for the purpose of tendering them to the buyer for inspection at the time he prevents an inspection are admissible as a part of the res gestæ.

In Error to the Circuit Court of the United States for the Northern District of Ohio.

This was an action brought by the defendant in error (hereafter called the plaintiff) against the plaintiff in error (hereafter called the defendant) for the recovery of the contract price of 8,060¾ feet of pipe furnished under a contract entered into through the following correspondence: On May 1, 1899, the plaintiff wrote the defendant, "Gentlemen: We offer you the following prices on secondhand pipe, f. o. b. cars your station. 40,000 feet 8-inch Matheson Jt., 22 lbs., at 45c. 25,000 feet 8-inch 25 lb., Line 25 lbs., at 62c. 50,000 feet 6-inch Standard Line Pipe, at 40c. The pipe referred to is in first-class, secondhand pipe. We sell the same subject to your inspection as shipped. The pipe is located in the vicinity of Tiffin, Findlay and Fostoria, Ohio. Above quotations stand good until May 4, 1899." On May 4, 1899, the plaintiff received from the defendant a telegram saying: "Will take six miles six-inch pipe at forty cents, less five per cent. delivered in Indiana, subject to my inspection. Answer." To which telegram the plaintiff replied: "Acknowledging your telegram of even date, stating that you would take six miles of the six-inch pipe offered you at forty cents per foot, less five per cent., delivered in Indiana, would say that we accept your offer. We will want to begin shipping this pipe the first or middle of next week, so please

send us shipping directions by return mail, that we may take the matter of freight rates up with the railroad companies, and oblige."

The plaintiff, in its petition, alleged that, by instruction of the defendant, it delivered 8,060¾ feet of the pipe, which was accepted by the defendant at the price agreed upon, amounting to $3,224.30, less a credit of $139.07 for freight, leaving a balance of $3,085.23, and further alleged that at the time it delivered the pipe, which was accepted, it had on hand, and offered to deliver in accordance with the contract, the balance of the pipe, amounting to six miles, but the defendant refused to accept it.

The defendant answered, admitting the contract and the delivery of the pipe as alleged in the petition, at the agreed price, as stated, and alleged that the defendant demanded that the plaintiff deliver to the defendant for inspection, under the terms of the contract, a sufficient amount of pipe to comply with the terms of sale, but that the plaintiff refused to deliver it, or allow the defendant to inspect any other pipe; and, for a cross-petition, the defendant alleged that upon the refusal of the plaintiff to sell and deliver the pipe, except that for which the action was brought, the defendant endeavored to buy in the market a sufficient amount of similar pipe to complete the contract of sale, but was unable to procure any such pipe in the market, and alleged that the price of first-class secondhand pipe had advanced, and upon the refusal of the plaintiff to fulfill its contract the defendant was compelled to, and did, buy new six-inch pipe at 75 cents a foot, in order to make up the amount undelivered by the plaintiff, and claimed damages of $8,289.40, and asked judgment against the plaintiff. When the testimony was closed, the court ruled that the contract was not for six miles of six-inch pipe, but was only for so much six-inch pipe as the defendant had in the locality indicated in its letter, which would pass inspection, and that the defendant would be obliged to show that there was that quantity in the vicinity stated which would pass inspection, and that the plaintiff refused to deliver it, before any damages could be recovered in the case, and, in the absence of such showing, no recovery could be had. The court therefore directed a verdict for the amount of the pipe which had been accepted, upon which the judgment was entered, which defendant now asks to have reviewed.

Blacklidge, Shirley & Wolf and E. W. Tolerton, for plaintiff in error.

Hamilton & Kirby (Wm. H. Dore, of counsel), for defendant in error.

Before LURTON and SEVERENS, Circuit Judges, and WANTY, District Judge.

WANTY, District Judge, after making the foregoing statement of the case, delivered the opinion of the court.

1. This was a contract for the delivery in Indiana of six miles of first-class secondhand six-inch pipe, which would pass the inspection of defendant, at 40 cents per foot, less 5 per cent., and in fulfillment the defendant was bound to deliver the full amount. There is nothing in the correspondence from which it could be inferred that the quantity of six miles was not material and determinative, and, when the plaintiff sold that definite quantity out of more than nine miles it had offered, it was bound to deliver it. If the plaintiff desired to contract only for such pipe as the defendant might select out of the quantity it had on hand at the places designated in its letter, it should have made its offer accordingly; but, when it agreed to sell and deliver six miles upon the terms stated, it could not fulfill its obligation by delivering 8,060¾ feet. The remarks of Mr. Justice Bradley in Brawley v. United States seem pertinent:

"From an examination of the authorities, it seems to us that the general rules which must govern this case may be expressed as follows: Where a contract is made to sell or furnish certain goods, identified by reference to independent circumstances, such as an entire lot deposited in a certain warehouse, or all that may be manufactured by the vendor in a certain establishment, or that may be shipped by his agent or correspondent in certain vessels, and the quantity is named with the qualification of 'about' or 'more or less,' or words of like import, the contract applies to the specific lot; and the naming of the quantity is not regarded as in the nature of a warranty, but only as an estimate of the probable amount, in reference to which good faith is all that is required of the party making it. * * * But when no such independent circumstances are referred to, and the engagement is to furnish goods of a certain quality or character to a certain amount, the quantity specified is material, and governs the contract." Brawley v. United States, 96 U. S. 168–171, 24 L. Ed. 622.

See, also, Norrington v. Wright, 115 U. S. 188, 204, 6 Sup. Ct. 12, 29 L. Ed. 366; United States v. Pine River Logging & I. Co., 32 C. C. A. 406, 89 Fed. 907.

The case should have been submitted to the jury to ascertain the damages, if any, suffered by the defendant on account of the failure of the plaintiff to fulfill its obligation to deliver the amount of pipe called for by the agreement. This interpretation of the contract disposes of all the assignments of error save two.

2. After the pleadings had been read, the court ruled that the plaintiff was entitled to judgment for the amount of pipe furnished at the contract price, in the absence of testimony, and that the burden rested upon the defendant to show that the plaintiff had declined to carry out its contract, and the amount of damages it suffered from such refusal. The defendant claimed that, although the answer admitted the contract and the delivery of the pipe as alleged in the petition, no recovery could be had unless the delivery of the balance covered by the contract had been waived or prevented by the defendant. The rule, under the great weight of authority, now is that a party who has failed to perform his contract in full may recover compensation for the part performed, less the damages occasioned by his failure. McDonough v. Evans Marble Co., 50 C. C. A. 403, 112 Fed. 634–637. Therefore, under the admissions in the answer, in the absence of proof, a judgment should have gone for the plaintiff; and there was no error in the ruling of the court compelling the defendant to sustain its crosspetition by evidence, or submit to a verdict and judgment.

3. The defendant endeavored to show by Edward Sweeney, who was to inspect the pipe for it, that, after he had inspected and accepted the amount sued for, he endeavored to inspect the balance of six miles, but that the person in charge for the plaintiff whose duty it was, under the contract, to tender it for inspection, prevented him from inspecting it. When the witness endeavored to tell what the man in charge for the plaintiff said, it was ruled out by the court on the ground that the authority of the person in charge to make any statements which would bind the plaintiff had not been shown. The president of the plaintiff corporation had testified that one Sullivan, who was its superintendent, was in charge of the pipe for the purpose of making delivery, and had full authority to bind the company; and because the witness Sweeney did not recognize a man whom the plain-

tiff had stand up in the audience as the one who was in charge of the pipe, without any further proof that the man in the audience was Sullivan, the court granted the motion to strike out all of Sweeney's testimony. This was error. The witness had sworn that he thought the man in charge was Sullivan, and plaintiff's president had sworn that Sullivan had full authority to bind it; and the failure of the witness, months after the transaction, to recognize the man in the audience as the same man, could not be conclusive on the jury, especially when there was no evidence that he was Sullivan, and no evidence that he was not the man in charge, who refused to allow an inspection of the pipe. But whoever the man might be, if he was in charge of the pipe for the purpose of tendering it for inspection, and declined to do so, it would be presumed that he had authority to bind the plaintiff, until the opposite was shown. The court ruled that whatever was done could be shown, and, if any physical force to prevent an inspection was exercised, that could be shown, but what was said could not. If it could be shown that the inspection was prevented by physical force, it certainly could be shown what was said at the time by the person exercising that force. The statements made were so connected with the acts as to constitute them a part of the res gestæ, and the evidence of them was as admissible as was evidence of the acts themselves.

For the reasons pointed out, the judgment must be reversed, and a new trial granted.