### LORRAINE MFG. CO. v. OSHINSKY et al.

#### (Circuit Court, S. D. New York. May 13, 1910.)

1. EVIDENCE (§ 450*)—WRITTEN CONTRACT—AMBIGUOUS TERMS—EXPLANATION—"AT"—"AT NOV. 15TH."

   A memorandum of sale provided that the goods should be delivered at specified dates thereafter, designated as "June 15/30," "May 15/30," "July 1/15," and "at Nov. 15th." It was conceded that the phrase "at June 15/30" meant between June 15th and June 30th. *Held* that, since "at," when used both as to time and place, often means "near," or "about," the phrase "at Nov. 15th" was ambiguous, and did not necessarily mean on Nov. 15th, and hence parol evidence was admissible to explain the same.

   [Ed. Note.—For other cases, see Evidence, Dec. Dig. § 450.*

   For other definitions, see Words and Phrases, vol. 1, pp. 593–599; vol. 8, p. 7585.]

2. SALES (§ 179*)—CONDITION PRECEDENT—WAIVER—SHORTAGE.

   Where buyers had ample opportunity to know of a shortage in delivery, having the goods and invoice, they waived the condition of full delivery, entitling the sellers to recover the price of the goods delivered, under the rule that, where there is only an implied condition, promisors who have waived conditions precedent will be held liable, without proof of performance by the promisee.

   [Ed. Note.—For other cases, see Sales, Cent. Dig. § 464; Dec. Dig. § 179.*]

At Law. Action by the Lorraine Manufacturing Company against Joseph Oshinsky and another. On motion for a new trial. Denied.

Dorman & Dana, for plaintiff.

Adolph Cohen, for defendants.

HAND, District Judge. The points raised are, first, that the language of the memorandum was too clear to require any oral explanation; second, that there was no waiver of the shortage in final delivery.

As to the first point, the language of the memorandum was the mills "will deliver to you * * * at the specified dates." All of the dates but the last were written as follows: "June 15/30," "May 15/30," "July 1/15." Concededly the phrase "at June 15/30" is somewhat ambiguous, and both sides admit that it means "between June 15th and June 30th." What, then, does "at November 15th" mean? Must I say that it can mean nothing but "on November 15th"? Of course, it does not follow that, because the word "at" may be ambigu-

ous when used in connection with the date "July 1/15," it must be so also when used with "November 15th." Taken literally and verbally, however, it has no certain meaning at all. Common usage does not employ the phrase "at July 4th." What we say is "on July 4th." When we use that preposition in regard to time, I think we normally imply a certain latitude, as, for example, "at Christmas," "at Easter," "at noon." In these we should not, commonly speaking, suppose that we mean on Christmas Day, or on Easter Sunday, or on the stroke of noon. If we did mean these things, it seems to me we should feel called on to speak more accurately. The very reason why we say "on Christmas Day," not "at Christmas Day," is because we instinctively feel it a solecism to combine the intended certainty of time with a preposition which may include, not only just that time, but also other time near it.

I cannot say that in this case the phrase "at November 15th" did necessarily mean that there was such a latitude, nor can I say that it meant only that very day; and that doubt as to just what it certainly does mean is precisely the circumstance, if the doubt be just, which creates the ambiguity requiring oral testimony. Unless I can say that the phrase means inevitably on that day, I should not shut out the proof. That it was not so understood appears from Oshinsky's own testimony, when he says that under the contract the plaintiff could have made earlier deliveries, which is substantially to say that, while "at" could not mean "on or near," it did mean "on or before." Of course, his judgment of the meaning is not conclusive on me; but I must say it is somewhat persuasive, and, if it did not mean beyond ambiguity "on November 15th," it was clear matter for the jury to say what it did mean.

The authorities corroborate this interpretation of the word "at": That, when used both as to time and as to place, it has a certain latitude of intent, and means often "near" or "about." Rogers v. Galloway Female College, 64 Ark. 627, 44 S. W. 454, 39 L. R. A. 636; Bartlett v. Jenkins, 22 N. H. 53, 63; Hunter v. Wetsell, 84 N. Y. 549, 554, 38 Am. Rep. 544; United States v. Buchanan (D. C.) 9 Fed. 689, 691; Minter v. State, 104 Ga. 743, 752, 30 S. E. 989; Rice v. Kansas Pac. Ry., 63 Mo. 314, 323. It is quite clear from these authorities that there is no absolute or verbal necessity of construing "at" as strictly equivalent to "on."

Nor in this contract is there any reason to limit the latitude which the word may have. As I have already said, the phrase is, strictly speaking, a barbarism. We simply do not speak in such terms; nor is there any other part of the writing which clears up the ambiguity. I shall, therefore, not disturb the verdict on that score.

The second point is as to waiver, and it is based upon the general proposition that the defendant cannot, by his waiver of a condition precedent, subject himself to liability which he did not originally accept. Thus, if here the obligation was to pay for 231, that was the only undertaking, and to hold the defendants liable for the delivery of 222· pieces is to impose upon them a liability to which they have never agreed. The objection is formally perfect, and substantially

idle. In the first place, there was here only an implied condition, and nothing is more common than to hold liable promisors, who have waived conditions precedent, without proof of performance by the promisee. The rule is of general application (Littlejohn v. Shaw, 159 N. Y. 188, 53 N. E. 810; Oakland Sugar Mill Co. v. Wolf Co., 118 Fed. 239, 55 C. C. A. 93), and upon it depends the right of the seller to sue for the price after acceptance without proof that the goods were free from defect.

The same rule applies to a shortage in delivery. Pittsburgh Plate Glass Co. v. Kerlin Bros. Co., 122 Fed. 414, 58 C. C. A. 648; Brady v. Cassidy, 145 N. Y. 171, 39 N. E. 814. The defendants had ample opportunity to know the shortage. They had the goods and the invoice. They made no objection on that score and they waived the condition. Of course, they were entitled to stand upon their exact rights, and it makes not a particle of difference that their choice of that particular time to do so might be thought selfish or repulsive to the more generous instincts of merchants; but they were nevertheless subject to the rules of just conduct which the law applies to such situations, and I cannot see that even this afterthought of their ingenious counsel avails them under the facts of the case.

Motion for a new trial denied.