5425.   FARMERS COTTON OIL CO. *v.* BROOKE & CO.

Where goods are sold under a written contract fixing a price "f. o. b. cars" at the place of shipment, without any right reserved for the buyer to designate thereafter the particular common carrier to whom delivery shall be made by the seller, the contract is complied with by a delivery "f. o. b. cars" of any one of several common carriers in the city from which it is agreed shipment shall be made, whether the cars are on a regularly used spur or side track of the carrier, or on the main line, or at the depot of the carrier, at the point of shipment.

DECIDED JULY 21, 1914.

Action on contract; from city court of Atlanta—Judge H. M. Reid.   November 1, 1913.

The Farmers Cotton Oil Company sued T. H. Brooke & Company for $229.94 and interest, as damages for breach of contract. Upon an agreed statement of facts the case was submitted to the judge for determination without a jury, and judgment was rendered in favor of the defendants and against the plaintiff for $10, with interest.   The plaintiff excepted to this judgment.

The agreed statement of facts was as follows:   "On the 28th day of September, 1911, T. H. Brooke & Company, of Atlanta, Georgia, defendant, entered into a contract with the Farmers Cotton Oil Company, plaintiff, of LaGrange, Georgia, a copy of which is as follows:

Contract.

Atlanta, Ga., 9/28/11.

Sold to          Messrs. T. H. Brooke & Company, Atlanta, Ga.

For account      The Farmers Cotton Oil Company, LaGrange, Ga.

Amount           Fifteen (15) car-loads of sound loose cottonseed
                 hulls.

Price            Six dollars ($6.00) per ton of 2,000# f. o. b. cars
                 at LaGrange, Georgia.

Shipment         Two (2) cars immediate, three (3) cars October,
                 five (5) cars November, and five (5) cars Decem-
                 ber, 1911.

Terms            Sight draft free of exchange: sellers to pay broker-
                 age.

"The residence and place of business of defendant was, at the time of said contract, and ever since has been, in Atlanta, Georgia. The residence and cotton-oil mill of the plaintiff is located and always has been situated on the Atlanta, Birmingham & Atlantic [Railroad] in LaGrange, Georgia, on which railroad only is its side-track used for the loading and unloading of cars. The location of plaintiff's mill, however, was not known to defendant when the contract, as above set forth, was entered into. There are several railroads entering and doing business at LaGrange, Georgia. In pursuance of the aforesaid agreement and contract of purchase and sale, the said plaintiff delivered to defendant seven car-loads of loose hulls, which were accepted and paid for by defendant. On two of said cars there was a trackage or switching charge of $2 per car, the same being for transfer of said cars after loading same from the side-track of the plaintiff, located on the A., B. & A. Railroad, to the Atlanta & West Point Railroad Company's track in LaGrange, which amount of $4 was paid by the plaintiff and charged to the account of the defendant. Likewise, on five cars of hulls, there was a charge of $2 per car for trackage or switching from the side-track of plaintiff on the A., B. & A. Railroad to that of the Atlanta & West Point Railroad in LaGrange, which sum of $10 was paid by defendant and charged to the account of the plaintiff. All seven cars were ordered by defendant shipped to Fairburn and Palmetto on the line of the Atlanta & West Point Railroad. Said railroad passes through LaGrange, Georgia. Defendant did not know that plaintiff had it charged for any trackage or switch-

ing on any of the seven cars of hulls until it had ordered out and received all of the seven cars of hulls. The plaintiff stood ready, willing, and able to deliver the remaining eight cars of hulls to defendant, keeping the same for the defendant and repeatedly tendering deliveries of said hulls to the defendant at the times specified in said contract and f. o. b. cars on plaintiff's side-track on the A., B. & A. Railroad at LaGrange, Georgia. The defendant, however, refused to accept the same or any part thereof, contending that there was a breach of the contract on the part of the plaintiff, for failure and refusal to pay the $2 per car trackage or switching charge on the seven cars of hulls already delivered or on the remaining cars undelivered.

"The defendant, under its construction of the contract, contended that it was the duty of the plaintiff to deliver the hulls as ordered by defendant free on board the cars of any railroad selected by defendant, doing business in LaGrange, and under this construction, defendant stood ready and willing to accept the balance of the hulls due under the contract. The use of the cabalistic sign, f. o. b., in the contract, meant, as between the parties, 'delivered free on board.' The plaintiff refused to deliver any of said hulls free on board cars at any other point in LaGrange, Georgia, save to the A., B. & A. Railroad, at LaGrange. The plaintiff having demanded acceptance and payment, under its construction of the contract, which was refused, sold said hulls on the 13th day of January, 1912, after notice to the defendant, at the market price, at LaGrange, Georgia, receiving therefor the sum of $447.83, which amount was $2 per ton less than the sum that the defendant agreed to pay plaintiff therefor, and which sum was $225.94 less than the price agreed to be paid by defendant to plaintiff for said eight cars of hulls, as set forth in the contract herein above referred to. The market price of said hulls at LaGrange, Georgia, was unchanged from December 21, 1911, to January 13, 1912."

The bill of exceptions states that "The following documentary evidence was introduced, by agreement: Two 'outward inter-road switching orders.' 'Atlanta & West Point Railroad Company. The Western Railway of Alabama. The Farmers Cotton Oil Company, Dr., for switching car. Initials and number A. B. A. 16549; contents Cs hulls; weight 60,000; rate 200; amount 200; from Farmers Cotton Oil Company; consignee A. & W. P.; final destination,

Fairburn, Georgia; issued at LaGrange Station, 10/24/1911. La-
Grange, Ga., October 25, paid; signed C. M. Awtrey, agent. In-
structions: This form shall be used to accomplish delivery of car-
load shipments, originating at industries, warehouses, and side
tracks of one line for delivery and forwarding over another line.
Part 1. To be rendered to agent of transportation line. . .
Part 3. To accompany the car to transportation line.'" The sec-
ond order was substantially as above. "Also two freight bills:
'Order notify T. H. Brooke & Company, one to Fairburn, Georgia,
and the other to Palmetto, Georgia, issuing stations; billing station:
LaGrange; shipper and original point of shipment: F. C. Oil
Company; articles: bulk hulls; freight charges 1310; advances
200; total 1510. Received payment, signed T. F. Culbreath, for
company.'"

*A. H. Thompson*, for plaintiff.

*Jones & Chambers*, for defendant.

WADE, J. (After stating the foregoing facts.) It is agreed by
counsel for both parties in this case that the determination thereof
depends solely upon the construction of the contract of sale set
forth in the above statement of facts; the vital question being
whether or not, under a contract providing for delivery "f. o. b.
at LaGrange, Georgia," which contains no other limitation as to
delivery, and does not by its express terms reserve to the buyer
the right to designate, before any shipment shall be loaded for
transportation, the particular carrier to whom such shipment shall
be entrusted, delivery could be made "f. o. b." to any common
carrier at LaGrange, Georgia. The defendants contend that the
plaintiff made a breach of the contract, by refusing to ship eight
cars of hulls (rejected on that account by the defendants) except
"f. o. b. cars plaintiff's side-track on the A., B. & A. Railroad, at
LaGrange, Georgia," whereby a trackage or switching charge of $2
per car would attach thereto if the defendants thereafter routed
the shipments over the Atlanta & West Point Railroad, which was
one of the several other railroads entering LaGrange; and insisted
that the plaintiff was bound, under the contract aforesaid, to de-
liver the hulls, "f. o. b. cars," to any particular carrier at LaGrange
that the defendants might designate. They contended that the
goods should have been placed free on board cars at a place or
places in LaGrange from which there would be no transportation

charge except the regular railroad freight-charge from LaGrange, Georgia, to the point of destination, or, in other words, that any charge for trackage or switching at the point of shipment should be eliminated. Would a tender on the part of the vendor of the fifteen cars of hulls "f. o. b. cars" on a spur-track of the A., B. & A. Railroad Company at LaGrange, ready to go forward to the vendees or to such person as the vendees might name, be a compliance on the part of the vendor with the terms of the contract, or would the refusal of the vendor to pay the transfer or intra-terminal switching charge of $2 per car from the tracks of the A., B. & A. Railroad Company, in LaGrange, Georgia, to the tracks of the Atlanta & West Point Railroad Company, or the tracks of any other railroad at LaGrange, Georgia, en route to destination, constitute such a breach of contract as would authorize the vendee to refuse the eight cars of hulls actually rejected?

In the first place, it seems clear that the words, "f. o. b. cars at LaGrange, Georgia," taken in their ordinary and usual signification, would include a delivery free on board cars of any common carrier at any point within the limits of the city of LaGrange, Georgia. The Standard Dictionary defines the preposition "at," when used in a connection similar to this, as meaning "within the limits of; in, within." In the case of Harris *v.* State, 72 Miss. 960 (18 South. 387, 33 L. R. A. 85), the court said that "the preposition 'at,' when it precedes the name of the place and denotes situation, frequently means the same as 'in' or 'within.'" In 4 Cyc. 365, it is said that "at" is "a word of somewhat indefinite meaning, whose significance is generally controlled by the context and attending circumstances denoting the precise sense in which it is used. Used in reference to place it often means 'in' or 'within;' but its primary idea is 'nearness' or 'proximity,' and it is commonly used as the equivalent of 'near' or 'about.'" "The word 'at' is somewhat indefinite; it may mean 'in' or 'within,' or it may mean 'near.' Its primary idea is nearness, and it is less definite than *in* or *on*. *At* the house may be in or near the house." *Minter* v. *State,* 104 *Ga.* 753 (30 S. E. 987). "The word 'at,' when used to denote local position, may mean 'in,' 'on,' or 'nearby,' according to the context." 1 Words & Phrases, 595. Giving the word "at" the more restricted meaning, a delivery "at LaGrange, Georgia," would be a delivery *in* or *within* that city. It was conceded by both

parties, in the statement of facts, that the letters "f. o. b." in the contract meant, as between the parties, "delivered free on board." "A stipulation for delivery 'f. o. b.' means that the seller at his own expense shall place the goods on the car or vessel which is to carry them on account of the buyer, at whose risk they are from that time." 24 Am. & Eng. Ency. Law (2d ed.), 1072. "The initial letters f. o. b. in contracts of sale when the property is to be transported mean free on board the cars at a designated place, whether that be the initial point of shipment or place of final destination. They imply that the buyer shall be free from all the expenses and risks attending the delivery of the property at the point named in the contract for such purpose." 13 Am. & Eng. Ency. Law (2d ed.), 726.

It is agreed that the plaintiff stood ready, willing, and able to deliver the rejected eight cars of hulls, and kept them for the defendants, repeatedly tendering delivery at the times specified in the contract, and "f. o. b. cars" on the plaintiff's side-track on the A., B. & A. Railroad in LaGrange, Georgia. It appears that the seven cars actually shipped by direction of the buyers were routed, by their direction, over the Atlanta & West Point Railroad, and it may be that the remaining eight cars, had they been accepted by the buyers, would have been similarly routed, though this is not disclosed by the record and can not be assumed.

As said in 35 Cyc. 174, "the effect of the 'f. o. b.' depends on the connection in which it is used, and if used in connection with the words fixing the price only, it will not be construed as fixing the place of delivery." Here it appears that "f. o. b." was used in the contract in direct connection not only with the price per ton, but with the place of delivery, and for the purposes of this case we will consider it as applying especially to the place of delivery. The railroad commission of Georgia is empowered, under the provisions of section 2664 of the Civil Code of 1910, "to prescribe rules with reference to spur-tracks and side-tracks, with reference to their use and construction, removal, or change," and may "prescribe rules and penalties for the transfer of cars through yards of connecting roads." Acting thereunder the railroad commission adopted rule 23-A, regulating charges for local intra-terminal service, and containing, among other things, the following: "2. For a car loaded on the terminal of one carrier, to be unloaded

on the terminal of another carrier, where only two carriers are interested, $4, to be divided as follows: Initial carrier, $2.00; delivering carrier, $2.00." From this it appears that if the plaintiff had not loaded the hulls "f. o. b." on the spur-track of the A., B. & A. Railroad, adjacent to its mills, but had carted the hulls at its own expense to the main line of the A., B. & A. Railroad within the limits of the city of LaGrange, or at its freight depot there, and loaded them on a car standing on the main line, and at the depot of the A., B. & A. Railroad, at LaGrange, the charge of $2 per car, for switching and transferring each of the cars from the main line of the A., B. & A. Railroad to the tracks of any other railroad the buyer might have named, would still have been a proper and legitimate charge, under the fixed rules of the commission. It is therefore evident that under this contract, delivery "f. o. b. cars" on a spur-track of the A., B. & A. Railroad was as effective for the purposes of the plaintiff as delivery on the main line of the A., B. & A. Railroad would have been, and placed no greater burden upon the buyer than would have rested upon them if delivery had been on the main track, or at the depot of that railroad. Also it appears that the trackage or transfer charges were a legitimate part of the regular freight tariff fixed by the rules of the railroad commission for the movement of goods to destination, and was in no sense a charge for delivering goods on cars "f. o. b.," ready for transportation by a common carrier.

It was within the power of the buyers, when making the contract, to place therein, provided the seller acceded thereto, a stipulation reserving to the buyers the right to designate the particular carrier at LaGrange, Georgia, to whom they might desire deliveries made when shipments were ordered out at the dates fixed by the contract, but no such stipulation was actually included in the contract as made. Since undoubtedly, in the absence of a right reserved in the contract to designate the carrier or carriers to whom different shipments should be delivered by the seller, a delivery by the seller to any common carrier at the place where delivery was to be made, "f. o. b. cars" of the carrier, would be a compliance with the terms of the contract; and since a delivery to such a common carrier on a spur-track adjacent to the mills of the seller would place upon the buyers no greater burden than that which would be incurred by delivery at the freight depot, or on the main tracks or line of the

common carrier, such delivery on a spur-track would be also a compliance with the terms of the contract requiring delivery "f. o. b. cars at LaGrange, Georgia." Delivery "f. o. b. cars" on the spur-track was exactly what the term imports,—*free on board* the cars of a common carrier "at;" which may be interpreted as "in," or "within," the city of LaGrange, Georgia.

It is perhaps true that the buyers, in entering into the contract (having, as it appears, no knowledge of the location of the mills of the seller), anticipated no charge for trackage or switching, but assumed that the seller could as easily and would as readily load cars on one railroad as on another; and possibly they would not have entered into the contract had.they known the exact situation. On the other hand, the contract is clear and unambiguous, with no suspicion of fraud attached thereto, and it may be that the seller, in negotiating the sale of the cottonseed hulls to the buyers, at and for the price agreed upon, was induced to make the contract by the fact that, owing to the location of the seller's mills on the spur-track of the A., B. & A. Railroad, the hulls could, with comparatively small expense to the seller, be placed on board the cars.

It is not for us to limit or extend the terms of a simple contract, and we hold that the plaintiff complied with its obligations under the contract in delivering on a spur-track of a common carrier seven cars of the fifteen it had contracted to deliver, "f. o. b. cars at LaGrange, Georgia," and in tendering at the times stipulated by the contract the remaining eight car-loads of hulls, "f. o. b. cars," on the same spur-track, notwithstanding the instructions received from the buyers to. load the hulls on cars located elsewhere and on a different railroad in the same city. We therefore hold that the judgment entered in this case was erroneous, and that the plaintiff was entitled to recover the amount of the loss incurred by the refusal of the defendants to accept the hulls tendered as aforesaid, and to recover the sum paid by the plaintiff as trackage on two cars, charged to the defendants and included in the suit.

*Judgment reversed. Roan, J., absent.*