### 65987. MULLINS v. THE STATE.

CARLEY, Judge.

Appellant was convicted of armed robbery in 1977. In April of 1980, appellant was transferred to the Floyd County Correctional Institute. Some five weeks later, he escaped. In April of 1981, appellant was arrested in Texas and was returned to Georgia. On September 14, 1981, appellant was indicted for the 1980 escape. On July 7, 1982, appellant was ordered returned from the Georgia State Prison in Reidsville, where he was then incarcerated, to Floyd County to stand trial for the escape. Appellant waived his right to a jury trial and elected to represent himself when he was tried on July 21, 1982. At the conclusion of the evidence, the trial court found appellant guilty of escape. Appellant's motion for new trial was overruled and he appeals pro se from the judgment of conviction and sentence imposed.

1. Appellant's defense was that his escape had been predicated upon fears for his life and was therefore "justified" within the meaning of OCGA § 16-3-20 (Code Ann. § 26-901). See generally *Young v. State,* 163 Ga. App. 507 (295 SE2d 175) (1982). Appellant first asserts that it was error to fail to grant his motion for directed verdict of acquittal because the state "stipulated" that his escape was in fact justified. The record contains no such stipulation. Indeed, the only relevant stipulation in the record is the one made by appellant that he was convicted of armed robbery and "eventually wound up incarcerated in the Floyd Correctional Institute." "A stipulation by the defendant in a criminal case not withdrawn is, like an admission in judicio, binding upon him. [Cits.]" *Snell v. State,* 158 Ga. App. 860, 861 (2) (282 SE2d 408) (1981). The evidence adduced at trial clearly authorized a finding that appellant was not "justified" in his escape from the county correctional institute in which he had stipulated he was lawfully confined. See generally *Mullins v. State,* 163 Ga. App. 895 (296 SE2d 628) (1982). The motion for directed verdict of acquittal was not erroneously denied.

2. Appellant enumerates as error the denial of his pre-trial motion to dismiss the case against him, a motion which had been made on the grounds that the Floyd County Sheriff's Department

had removed his "law books, defense notes, case holdings, pens, writing paper and case files . . ."

As he apparently had done on numerous occasions, appellant elected to serve as his own lead counsel in the instant case in conjunction with appointed assistant counsel. See *Mullins v. Lavoie,* 249 Ga. 411 (290 SE2d 472) (1982); *Mullins v. State,* 147 Ga. App. 330 (248 SE2d 708) (1978). While it appears that materials appellant was using in preparation of his own defense may have been taken from him for a short period of time, it also appears that they were for the most part returned to him prior to trial. In addition, appellant had other legal materials available to him, as well as the benefit of appointed assistant counsel if he desired. Appellant made no motion to continue his trial in order that an effective and adequate defense could be presented, insisting instead that the case against him be dismissed. "[A]t no time did the appellant request a continuance nor has he shown in any way how the failure of the trial court, sua sponte, to delay the trial has harmed the appellant in any way. It is an old and sound rule that error to be reversible must be harmful. [Cit.]" *Garvin v. State,* 144 Ga. App. 396, 398 (3) (240 SE2d 925) (1977). It was not error to deny appellant's motion to dismiss the case.

3. Appellant also asserts that the case against him should have been dismissed because he was denied the right to a speedy trial. Appellant filed no demand for trial pursuant to OCGA § 17-7-170 (Code Ann. § 27-1901). Thus, the only question presented is whether the delay between appellant's arrest and return to Georgia in April of 1981 and the commencement of his trial in July of 1982 was a violation of his Sixth Amendment right to a speedy trial. See generally *State v. Hight,* 156 Ga. App. 246 (274 SE2d 638) (1980).

"Four factors must be weighed in deciding constitutional speedy trial questions: (1) length of delay; (2) reason for delay; (3) defendant's assertion of his right; and (4) prejudice to the defendant. [Cits.] Because constitutional speedy trial questions involve issues of fact, such questions should be resolved by a court having jurisdiction of the criminal prosecution. [Cit.]" *Garrett v. Arrington,* 245 Ga. 47, 48 (262 SE2d 808) (1980). In the instant case, as in *State v. Lively,* 155 Ga. App. 402, 406 (270 SE2d 812) (1980), appellant "apparently did not want a speedy trial and has shown no actual prejudice . . ." "Weighing all of the factors, we conclude that the lengthy delay, not shown to be purposeful and not shown to have prejudiced the defendant in any way was not a denial of the defendant's Sixth Amendment right to a speedy trial." *State v. Fields,* 137 Ga. App. 726, 729 (224 SE2d 829) (1976).

4. Former Code Ann. § 26-9902 (Ga. L. 1968, pp. 1249, 1336), in effect at all times relevant to the instant appeal, provided in part:

"The trial of *prisoners escaping from the penitentiary* shall be had for such escape before the superior court of the county in which the escape occurs, and *prisoners so escaping shall remain in the penitentiary after their apprehension,* and be treated as other convicts, until such trial shall take place . . ." (Emphasis supplied.) Relying upon this former law, appellant asserts that he had a statutory right to be returned to and remain in the Floyd County Correctional Institute after his apprehension in Texas because this right was violated, and the charges against him should have been dismissed.

Statutory research demonstrates that prior to 1957 and subsequent to November 1, 1982, the Floyd County Correctional Institute, from which appellant escaped, would be considered a "penitentiary." Prior to 1957, "penitentiary" was defined by former Code Ann. § 102-103 as "any place where felony convicts are confined at hard labor, under the authority of any law of this state." Under this definition, there could be a "penitentiary" in each county in the state, the only requirement being that one felony convict be in confinement and at hard labor at a correctional institute therein. See *Howell v. State,* 164 Ga. 204, 210 (138 SE 206) (1927). Ga. Laws 1957, pp. 477, 482, however, repealed the old definition of "penitentiary" and replaced it with the following: "[A]ny place where felony prisoners *exclusively* are confined at hard labor under the authority of any law of this state." (Emphasis supplied.) By requiring that a "penitentiary" confine felony convicts exclusively, the 1957 statute obviously had a rather drastic effect in changing the definition of a "penitentiary." Instead of one felony prisoner being sufficient to qualify a county correctional institute as a "penitentiary" (*Howell v. State,* supra), after 1957 the presence of one misdemeanor prisoner in a county correctional institute would prevent it from being "exclusively" for incarceration of felony convicts and accordingly from its being a "penitentiary." After November 1, 1982, it appears that the effect of OCGA § 1-3-3(13) (Code Ann. § 102-103) is to once again broaden the definition of "penitentiary" to include "any place where inmates are confined under the authority of any law of this state."

Appellant's trial was held prior to the effective date of OCGA § 1-3-3(13) (Code Ann. § 102-103) and, thus, at a time when the 1957 enactment provided the operative definition of "penitentiary." The trial court in the instant case found that the Floyd County Correctional Institute was not a "penitentiary" because it was not "exclusively" for the confinement of felony prisoners. On this basis, the trial court found that former Code Ann. § 26-9902 was inapplicable because appellant had not escaped from a

"penitentiary." The trial court accordingly held that appellant had no right, if one in fact existed under the inapplicable statute, to be returned to and to remain in the Floyd County Correctional Institute after his apprehension. As discussed above, the correctness of this ruling is borne out by analysis of the relevant statutory definition of "penitentiary." Former Code Ann. § 26-9902 had no application in appellant's case and the trial court did not err in so holding.

We would note, however, that former Code Ann. § 26-9902 has since been replaced by existing OCGA § 17-8-50 (Code Ann. § 26-9902), which provides in relevant part: "The trial of prisoners escaping from *a* state or county correctional institution shall take place in the superior court of the county in which the escape occurs, and inmates so escaping shall remain in *the* correctional institution after their apprehension and shall be treated as are other inmates until the trial takes place . . ." (Emphasis supplied.) It must remain for future resolution whether the intent of this statute is to provide merely that escapees shall not suffer administrative punishment for the escape, but "shall be treated as are other inmates until the trial takes place," or to provide instead that a prisoner who escapes from "a" correctional institution has the right, enforceable by some remedy, to be returned to and, pending trial, remain in "the" *same* correctional institution after his apprehension.

*Judgment affirmed. Deen, P. J., and Banke, J., concur.*

Decided July 12, 1983 —
Rehearing denied August 5, 1983 —

Hubert T. Mullins, *pro se.*
*F. Larry Salmon, District Attorney, Stephen F. Lanier, Assistant District Attorney,* for appellee.